# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| STEPHANIE ZIMMECK, | ) | |
| Plaintiff, | ) ) ) | 3:13-cv-14743 |
| v. | ) ) | **COMPLAINT** |
| MARSHALL UNIVERSITY BOARD OF | ) | **(Jury Demanded)** |
| GOVERNORS dba Marshall University, Joan C. | ) | |
| Edwards School of Medicine; JOSEPH I. | ) | |
| SHAPIRO, individually and as Dean of the | ) | |
| Marshall University School of Medicine; AARON | ) | |
| MCGUFFIN, individually and as Senior Associate | ) | |
| Dean for Student Affairs; TRACY LEGROW, | ) | |
| individually and as Assistant Dean for Academic | ) | |
| Affairs; ROBERT C. NERHOOD, individually and | ) | |
| as Interim Dean of Marshall University School of | ) | |
| Medicine; MARIA VEITIA, individually and as | ) | |
| Associate Dean for Student Affairs, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW, Plaintiff, STEPHANIE ZIMMECK (hereinafter referred to as "Plaintiff"),

by and through her attorney of record, JASON J. BACH, ESQ. of THE BACH LAW FIRM, LLC,

and hereby complains and alleges against the above-named Defendants, and each of them, based

upon knowledge, information and a reasonable belief derived therefrom, as follows:

## INTRODUCTION

This is a Complaint for Damages and injunctive relief brought by a student of Marshall

University, Joan C. Edwards School of Medicine. The claims, against the University and faculty

of this public university, are based upon Section 504 of the Rehabilitation Act of 1973, Title II of

the Americans with Disabilities Act (ADA), 42 U.S.C. Section 1983 and the Fourteenth Amendment

of the United States Constitution, alleging denial of reasonable accommodations, infringement of

Plaintiffs' right to substantive and procedural due process. Plaintiffs also rely on the Marshall

University Student Handbook (Code of Student Rights and Responsibilities), the Student

Impairment Assistance Policy, and the Marshall University Graduate Catalog and alleges a pendent

breach of contract claim. Plaintiffs have also asserted a claim against University Defendant for

negligent hiring, training, and supervision, and all Defendants for intentional infliction of emotional distress.

## PARTIES & JURISDICTION

1.      This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. Section 1331 (federal question), 28 U.S.C. Section 1332 (diversity jurisdiction),  and 28 U.S.C. Section 1343 (civil rights).

2.      Supplemental jurisdiction over Plaintiff's pendent state law claims is invoked pursuant to 28 U.S.C. Section 1367, as the claim arises out of the same transaction and occurrence as Plaintiff's federal claim.

3.      Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. 1391(b) in that the claims arose in this district, and Plaintiff and Defendants are located in this district.

4.      Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. Section 1988.

5.      Plaintiff, STEPHANIE ZIMMECK , at all relevant times was a resident of the State of West Virginia or the Commonwealth of Virginia and was a student at Marshall University, Joan C. Edwards School of Medicine.  She is currently a resident of the Commonwealth of Virginia.

6.      Defendant, MARSHALL UNIVERSITY BOARD OF GOVERNORS dba Mashall University, Joan C. Edwards School of Medicine  (hereinafter referred to as "MUSOM"), was and is a statutorily created public entity, with its principal offices located in Huntington, Cabell County, West Virginia and operates MUSOM, a  public educational institution of higher learning, located in Huntington, Cabell County West Virginia.

7.      Defendant JOSEPH I. SHAPIRO, at all times relevant was Dean of the Marshall University School of Medicine.  He is named in this case both individually and in his official capacity as Dean of the Marshall University School of Medicine.

8.      Defendant AARON MCGUFFIN, at all times relevant was Senior Associate Dean for Student Affairs at MUSOM.  He is named in this case both individually and in his official capacity as Senior Associate Dean for Student Affairs at MUSOM.

9. Defendant TRACY LEGROW, at all times relevant was Associate Dean for Academic Affairs. She is named in this case both individually and in her official capacity as Associate Dean for Academic Affairs.

10. Defendant ROBERT C. NERHOOD, was Interim Dean of the Marshall University School of Medicine from July 2011 through June 2012. He is named in this case both individually and in his official capacity as Interim Dean of the Marshall University School of Medicine.

11. Defendant MARIA VEITIA, at all times relevant was Associate Dean for Student Affairs. She is named in this case both individually and in her official capacity as Associate Dean for Student Affairs.

12. Plaintiffs are informed and believe and thereon allege that there may be "Doe" defendants that are responsible in some manner for the events and happenings referred to in this action and proximately caused damages to Plaintiffs as herein alleged, and that Plaintiffs will ask leave of this Court to amend this Complaint, to insert the true names and capacities of said Defendants, and when the same have been ascertained to join such Defendants in this action.

13. At all times herein, the individual Defendants and the Defendant MUSOM, have been acting under color of law.

14. At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of West Virginia, County of Cabell.

15. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

**GENERAL FACTUAL ALLEGATIONS**

16. In August 2009, Plaintiff, Stephanie Zimmeck, started medical school at Marshall University School of Medicine ("MUSOM"). Plaintiff successfully completed her first two years of the program.

17. On or about December 17, 2010, the Academic Standards Committee at MUSOM placed Plaintiff on academic probation for receiving a "U" interim grade after one semester of a full year Advanced Patient Care course. Plaintiff successfully passed the course at its conclusion in May 2011. Yet, for some reason Plaintiff remained on academic probation.

18.     On or about May 27, 2011, Defendant, Aaron McGuffin, the Senior Associate Dean for Student Affairs, filed a "critical incident report" against Plaintiff and referred her to the Academic and Professional Standards Committee (APSC). Dr. McGuffin filed the report without prior notice to Plaintiff, for missing a NMBE Step 1 practice examination.  Plaintiff was unaware that the practice examination was mandatory and she fully resolved this issue with MUSOM. Plaintiff took responsibility for not knowing the practice examination was mandatory and for missing it.  Plaintiff informed Dr. McGuffin that she would reschedule her official USMLE Step 1 examination to take the NBME practice examination, which she did on June 17, 2011. Dr. McGuffin stated that Plaintiff had made the right and mature decision and gave the impression to Plaintiff that the matter was resolved.

19.     On August 26, 2011, Plaintiff took the official USMLE Step 1 examination, on which she scored in line with the average for all medical students in the United States.

20.     On October 7, 2011, Plaintiff was called to a meeting before the APSC. She was informed that the meeting was to discuss the May 27, 2011 "critical incident report" regarding her missing the May NMBE Step 1 practice examination.  As such, Plaintiff was prepared to discuss how she handled the report and that the matter was fully resolved per Dr. McGuffin.

21.     However, at the October 7, 2011 meeting the May 27, 2011 report was not discussed, rather, Plaintiff was interrogated by the committee regarding completely different issues or which she had no advance warning.  One issue that was discussed was that in February 2010, during Plaintiff's first year of medical school, she discussed with Dr. Maria Veitia, the Associate Dean for Student Affairs, that she was having trouble adjusting to living in Huntington, WV.  Dr. Veitia recommended that Plaintiff begin taking anti-depressant medication. The committee asked Plaintiff about her adjustment to living in West Virginia and also suggested that Plaintiff use anti-depressants.  Although Plaintiff was not prepared to answer these types of questions as she had no notice that the committee would be asking her these types of questions, Plaintiff explained that she was now happy living in West Virginia and that she had begun taking Lexapro.

22.     On October 18, 2011, the APSC issued a letter to Plaintiff stating that based upon the October 7, 2011 meeting, she was to remain on academic probation.  Even though Plaintiff was

never previously found responsible for any "professional misconduct", the APSC stated that "Receipt of any incident report due to your professional misconduct will result in serious sanctions which can include suspension or possibly dismissal from the school of medicine." This decision is a clear violation of MUSOM policy.  The policy states that students may be placed on academic probation for failing to correct deficiencies or for not receiving a passing grade.  Plaintiff had no outstanding or unresolved academic deficiencies, yet she remained on academic probation.

23.     MUSOM unilaterally imposed sanctions against Plaintiff for unsupported allegations of "professional misconduct" by imposing a heavy burden upon her, which was not imposed on other students at the school of medicine, when the school said that she may be dismissed from the program for any further reports of professional misconduct when Plaintiff never even had a prior report of professional misconduct.

24.     On November 8, 2011, Dr. Wesam Bolkhir submitted a report reporting alleged violations of standards of professionalism of Plaintiff that occurred between October 31, 2011 and November 7, 2011.  As the Deans of the medical school were aware, Plaintiff was suffering from unexpected and severe side effects from taking the drug Lexapro during that time period.

25.     Plaintiff immediately met with Defendant, LeGrow following Dr. Bolkhir's report on November 9, 2011 and informed Dr. LeGrow that she was having suicidal ideations. Dr. LeGrow was also present at the APSC October 7, 2011 hearing when Plaintiff disclosed to MUSOM she had begun taking Lexapro.

26.     On November 23, 2011, Plaintiff met with Dr. LeGrow, Dr. Bolkhir, and Dr. Larry Dial to establish an action plan to resolve the allegations in Dr. Bolkhir's report.  Plaintiff resumed her Internal Medicine rotation the following day.  Even though MUSOM was aware that Plaintiff was on Lexapro and having suicidal ideations, they reinstated her in the Internal Medicine rotation.

27.     According to the MUSOM Student Impairment Assistance Policy, "The SOM has the authority to remove a student from clinical responsibilities if there is evidence of potential impairment that may impact patient care or appropriate student performance." MUSOM had knowledge that Plaintiff was impaired. MUSOM failed to follow their policy, thus putting Plaintiff and her patients in danger.

28.     Even though an action plan was in place regarding the November 8, 2011 report of Dr. Bolkhir, which Plaintiff was successfully progressing through, that Plaintiff was no longer taking Lexapro, and there were no further incidents or allegations of professional or academic misconduct, on December 13, 2011, Ms. Zimmeck was informed that the APSC was to meet on December 19, 2011 to discuss the November 8, 2011 report.

29.     Plaintiff contacted Dr. LeGrow, who informed her that she did not need to be present at the meeting, that the meeting was a mere formality, and that she did not have to worry because she already had worked with MUSOM to develop an action plan to resolve the issues.  As a result, Plaintiff was not present to defend herself or to respond to any questions from the committee. Nonetheless, Plaintiff informed MUSOM that she was available by phone to participate in the meeting.  Plaintiff was never contacted during the meeting.

30.     On December 28, 2011, Ms. Zimmeck was informed that the APSC recommended that she be dismissed from MUSOM as a result of the November 8, 2011 report of Dr. Bolkhir and the decisions from the December 19, 2011 hearing, in which Plaintiff was not even allowed to participate or defend herself.  These actions are egregious and in direct violation of Plaintiff's due process and equal protection rights as she was subject to a higher standard regarding "professional misconduct" than her classmates and she was not afforded *any* sort of hearing or opportunity to defend herself from the allegations against her.

31.     Plaintiff exhausted her administrative remedies by timely appealing the decision to dismiss her from MUSOM.  On January 9, 2012, the Appeals Sub-Committee of the Dean's Advisory Committee conducted a meeting and upheld the decision of dismissal.  Once again, Plaintiff was not permitted to attend the meeting and was again denied the opportunity to defend herself.

32.     These egregious actions on the part of MUSOM are especially troublesome in light of the Liaison Committee of Medical Education's (LCME) June 2011 report that found that MUSOM exhibited the inability to provide emotional support to its students.  Despite the administration, composed of medical doctors', knowledge of the medication Plaintiff was taking, she was not offered a shred of support or understanding from the physician administration, who

should have recognized the potential problems that could be caused by a student taking Lexapro. In fact, the administration did not even take that fact into consideration in dismissing Plaintiff from MUSOM, another violation of the MUSOM policy.

33. Section 504 of the Rehabilitation Act of 1973 MUSOM from discriminating against students, or prospective students, with a qualified disability. Plaintiff provided MUSOM with sufficient information as early as February 2010 in her meeting with Dr. Veitia, that she has disabilities, namely, ADHD and depression, which substantially limit her time management skills and her ability to adjust to a new living environment, and qualifies her under Section 504. 34 C.F.R. § 104.3.

34. Federal law dictates that Ms. Plaintiff is entitled to various "academic adjustments" to ensure that she is not discriminated against, based upon her disabilities. 34 C.F.R. § 104.44. These adjustments can include substitution of specific courses required to complete a degree program, and modification "of the manner in which specific courses are conducted." 34 C.F.R. § 104.44(a). Section 504 also requires that a college or university modify how they evaluate academic achievement of a student with disabilities. 34 C.F.R. § 104.44(c).

35. The accommodations that could have been provided to Plaintiff were minimal and were necessary for Plaintiff to progress through the program, but were not provided to her. As a result of Plaintiff not being provided reasonable accommodations, she was put at a substantial disadvantage from other students, and was ultimately dismissed from the program.

36. The decisions made by Defendants to remove Plaintiff from the university are arbitrary and capricious in nature, are in violation of MUSOM's Student Rules and Regulations, and in violation of Plaintiff's U.S. Constitutional Rights.

37. As a result of Defendants' arbitrary, capricious, and unlawful actions, Plaintiff has been prevented from attending classes at MUSOM, thus halting and destroying her ability to attend medical school or to ever enter the medical profession.

38. As a result of the above, Defendants, and each of them, have wrongly caused Plaintiff to be sanctioned and removed from MUSOM and for the above-noted sanctions to be wrongly placed on her record, all in violation of her U.S. Constitutional Rights, depriving her of the

opportunity to obtain an education and further her career, and inflicting emotional distress and physical injury, all damaging Plaintiff in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

39.     The harm caused by Defendants is irreparable and can only be mitigated by the reinstatement of Plaintiff in the good standing in the medical school so that she may transfer in advanced standing to an alternative medical school. We also ask that she be placed on voluntary medical leave, any notation in her academic record that reflects a dismissal is removed, and prohibiting Defendants from further interfering with Plaintiffs' educational future.

### FIRST CAUSE OF ACTION

### *VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973,*

### *29 U.S.C. §701, et seq.*

40.     Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

41.     Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).

42.     Defendant, MUSOM, receives federal financial assistance, as defined by 29 U.S.C. §794, and, as such, may not discriminate against a person because of her disability.

43.     Despite Plaintiff's requests for reasonable accommodations, Defendants have refused to provide them.

44.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at the University, such acts and omissions violating the Rehabilitation Act thereby.

45.     MUSOM exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff, so that she could continue in her educational program, a violation of the Rehabilitation Act thereby.

46.     In addition, and in the alternative to the above-noted violation of the Rehabilitation

Act, the University also violated the Act when retaliating against Plaintiff when she began to advocate for her rights pursuant to the Act.

47. Such acts, omissions and failures by the University proximately caused injuries to Zimmeck.

48. Defendants, and each of them, have wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, harassed and retaliated against, forcibly withdrawn from the program, all in violation of her rights pursuant to Section 504 of the Rehabilitation Act of 1973, depriving her of the opportunity to complete her education and further her career, and inflicting emotional distress and physical injury, all to her damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

49. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

50. Plaintiff is entitled to injunctive and declaratory relief to obtain the reasonable accommodations, as permitted under the statute, to allow her immediate access and participation in this public education program.

## SECOND CAUSE OF ACTION

### *VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12101, et seq.*

51. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

52. Plaintiff is a "qualified individual with a disability," as defined in 42 U.S.C. § 12131(2).

53. MUSOM is considered a "public entity," as defined in 42 U.S.C. § 12131(1), and each receives federal financial assistance so as to be covered by the mandate of the ADA.

54. The University is a facility, the operation of which constitutes a program and services for ADA purposes.

55.     MUSOM failed and refused to reasonably accommodate Plaintiff in violation of Title II of the ADA. Such failures caused injuries to Plaintiff.

56.     MUSOM failed and refused to reasonably modify its services in violation of Title II of the ADA. Such failures proximately caused injuries to Plaintiff.

57.     Defendants, and each of them, have wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, harassed and retaliated against, forcibly withdrawn from the program, all in violation of her rights pursuant to the ADA, depriving her of the opportunity to complete her education and further her career, and inflicting emotional distress and physical injury, all to her damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

58.     The acts, conduct and behavior of each of the individual Defendants were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages in a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

59.     It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

60.     Plaintiff is entitled to injunctive and declaratory relief to obtain the physical and programmatic accessibility, as permitted under the statute, to allow her immediate access and participation in this public education program.

### THIRD CAUSE OF ACTION

### *CIVIL RIGHTS VIOLATION, 42 U.S.C. §1983, PROCEDURAL DUE PROCESS*

61.     Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

62.     That Plaintiff has a clearly established right to equal access to all benefits and privileges of a public higher education and a right to be free from said illegal practices and policies.

63.     MUSOM failed to comply with its own policies and due process protections by placing unreasonable and unnecessary conditions on Plaintiff to continue her education, which were contrary to MUSOM policy, including: (1) placing Plaintiff on academic probation despite the fact

that she was in good academic standing and she had never failed to correct deficiencies or receive a passing grade; (2) imposing sanctions against Plaintiff for unsupported allegations of "professional misconduct" when she had never received a prior report of professional misconduct; (3) failing to allow Plaintiff to be present at the December 19, 2011 ASPC meeting to defend herself or to respond to any questions from the committee; (4) dismissing Plaintiff from MUSOM without any notice or any opportunity for a hearing based upon a November 8, 2011 report of Dr. Bolkhir regarding allegations of misconduct; (5) dismissing Plaintiff from MUSOM based upon the Dr. Bolkhir report, after Plaintiff had already met with MUSOM administration to establish an action plan to resolve the allegations in Dr. Bolkhir's report and was progressing through the action plan without further incident.

64. Defendants failed to allow Plaintiff a hearing, to be present and defend herself from the allegations against her, to confront the witnesses against her or to address any of evidence presented against her with regard to her dismissal.

65. As a result of Defendants' actions, deliberate indifference to and/or reckless disregard for the constitutional rights of Plaintiff, she has suffered and continues to suffer a deprivation of her rights, privileges and immunities secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

66. That by reason of the aforesaid actions, Plaintiff is entitled to a Permanent Injunction requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in.

67. The acts, conduct and behavior of each of the individual Defendants were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

68. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## FOURTH CAUSE OF ACTION

### *CIVIL RIGHTS VIOLATION 42 U.S.C. §1983, SUBSTANTIVE DUE PROCESS*

69.     Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

70.     That Plaintiff has a clearly established right to equal access to all benefits and privileges of a public higher education and a right to be free from said illegal practices and policies.

71.     The actions of the Defendants, as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

72.     As a result of Defendants' actions, Plaintiff suffered and continues to suffer a deprivation of her rights, privileges and immunities secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

73.     That by reason of the aforesaid actions, Plaintiff is entitled to a Permanent Injunction requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in.

74.     The acts, conduct and behavior of each of the individual Defendants were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

75.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## FIFTH CAUSE OF ACTION

### *CIVIL RIGHTS VIOLATION 42 U.S.C. §1983, EQUAL PROTECTION*

76.     Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

77.     That the above actions by Defendants have resulted in the denial of equal protection rights, as a "class of one," all in violation of the Fourteenth Amendment to the United States Constitution, as Plaintiff was retaliated against, harassed, disciplined against, intimidated, and dismissed from the medical school, all against her will, and differently than those similarly situated medical students.

78.     That the actions of Defendants were the result of personal animus against the

Plaintiff, and said actions and denials were taken without any rational basis.

79.     That by reason of the aforesaid actions, Defendants' actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of Plaintiff and other similarly situated students, all in violation of her constitutional rights.

80.     As a result of Defendants' actions, Plaintiff suffered and continues to suffer a deprivation of her rights, privileges and immunities secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

81.     That by reason of the aforesaid actions, Plaintiff is entitled to a Permanent Injunction requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in.

82.     The acts, conduct and behavior of each of the individual Defendants was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

83.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT

84.     Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

85.     Plaintiffs has an express and implied contract with MUSOM in connection with rights explicitly guaranteed by MUSOM pursuant to the Marshall University Student Handbook (Code of Student Rights and Responsibilities); the Student Impairment Assistance Policy, and the Marshall University Graduate Catalog.

86.     The actions of MUSOM, including but not limited to Defendant's discrimination, denial of reasonable accommodations, physical and programmatic accessibility, harassment, retaliation, the forcible withdrawal from the program, failure to provide adequate, process each constitute a breach of the express and implied contract.

87.     As a result of the breach committed against Plaintiff, she has been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

88.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Zimmeck is entitled to an award of attorney's fees and costs of suit incurred herein.

## SEVENTH CAUSE OF ACTION

### *NEGLIGENT HIRING, TRAINING, & SUPERVISION*

89.     Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

90.     At all times material and relevant herein, MUSOM had a duty of reasonable care to its students.

91.     At all times relevant herein, MUSOM had a duty not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise their agents, officers, and employees.

92.     At all times relevant herein, MUSOM had a duty to protect the public, such as Plaintiff, from the illegal actions of their own agents, officers, employees and others. In addition, MUSOM had a duty not to hire individuals with a propensity towards committing unlawful acts against the public, and to adequately train and supervise their employees.

93.     Likewise, at all times relevant herein, MUSOM had a duty not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise their agents, officers, and employees.

94.     Defendant breached its duty, and is therefore negligent and liable to Plaintiff, who has suffered serious economic loss, loss of tuition, loss of reputation, loss of daily and future income, and to incur severe financial obligations in order to retain attorneys, as well as other painful injuries, deprivation of her liberty, invasion of his privacy, grievous mental suffering, all to her damage in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

95.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## EIGHTH CAUSE OF ACTION

### *INTENTIONAL INFLICTION OF SEVERE MENTAL DISTRESS*

96.     Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

97.     As a result of Defendants' intentional and negligent conduct and omissions, which constitute extreme and outrageous behavior, Plaintiff suffered and continues to suffer great mental and emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

98.     Plaintiff has required medical and/or psychological care as result of the malfeasance and nonfeasance of Defendants. This has caused Plaintiff to incur expenses for medical care, treatment, and expenses incidental thereto. The total amount of Plaintiff's damages cannot yet be fully ascertained and, as such, Plaintiff respectfully asks leave of this Court to amend this Complaint to insert the full amount when such have been fully ascertained.

99.     As a result of the mental distress described above, Plaintiff has suffered serious psychological injury, loss of community reputation, medical expenses, and to incur severe financial obligations in order to retain attorneys to seek redress against the unlawful conduct of the Defendants, as well as grievous mental suffering, all to her damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

100.    The acts, conduct and behavior of the Defendants were performed willfully, intentionally, oppressively, fraudulently and maliciously, by reason of which Plaintiff is entitled to punitive damages in a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

101.    It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

**WHEREFORE**, Plaintiff prays that this Honorable Court: Enter judgment in Plaintiffs' favor, and against the Defendants, and each of them:  (a) for compensatory damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); (b) for punitive damages each in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); (c) for injunctive and declaratory relief; (d) for interest; and (d) together with the costs and disbursements of this action and such other attorney's fees pursuant to 42 U.S.C. §1988, 42 U.S.C. §2000d, *et. seq*, and further relief as justice requires.

DATED this 18th day of June, 2013.

THE BACH LAW FIRM, LLC


By:____*/s/ Jason J. Bach*_____
JASON J. BACH, ESQ.
6053 S. Fort Apache Road, Suite 130
Las Vegas, NV 89148
Tel: (702) 925-8787
Fax: (702) 925-8788
Attorney in Charge for Plaintiffs


ST CLAIR & LEVINE


By:____*/s/ William D. Levine*_____
WILLIAM D. LEVINE, ESQ.
717 Sixth Avenue
Huntington, WV 25701
Tel: (304) 529-3030
Fax: (304) 529-3043
Local Counsel for Plaintiffs