IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEPHANIE ZIMMECK,

                Plaintiff,

v.                                      CIVIL ACTION NO.  3:13-14743

MARSHALL UNIVERSITY BOARD OF
GOVERNORS d/b/a Marshall University, Joan
C. Edwards School of Medicine, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is a motion by Defendants Marshall University Board of Governors,[1] Aaron McGuffin, Tracy Legrow, Robert C. Nerhood, and Maria Veitia[2] for partial dismissal of Plaintiff's Complaint (ECF No. 13). The Court **GRANTS in part** Defendants' motion for partial dismissal. Counts 3, 4, and 5 may proceed against the Individual Defendants in their individual capacities as to all relief sought in those Counts and against the Individual Defendants in their official capacities as to Plaintiff's request for prospective injunctive relief in

---

[1] The Marshall University Board of Governors does business as the Joan C. Edwards School of Medicine ("MUSOM"). The parties also refer to this party simply as "Marshall University." These three terms appear to be used interchangeably by the parties and the Court follows suit here.

[2] This motion was also filed by Defendant Joseph I. Shapiro, but he has subsequently been terminated from this case via the Stipulation of Voluntary Dismissal, ECF No. 23. Also pending before the Court is a motion by Mr. Shapiro to dismiss him from the case. Mot. Dismiss, ECF No. 11. In light of Mr. Shapiro's voluntary dismissal from the case, the Court **DENIES as moot** his motion to dismiss.

those Counts. The Court **DISMISSES** the remainder of Counts 3, 4, and 5. Also, the Court **DISMISSES** Counts 6 and 8 in their entirety. The parties are in agreement that Plaintiff will bring Counts 1 and 2 solely against the Marshall University Board of Governors and that she will not seek punitive damages in Counts 1 and 2. The parties also agree that Count 7 should be dismissed. The Court **DISMISSES without prejudice** those portions of Counts 1 and 2 which are inconsistent with this agreement among the parties and **DISMISSES without prejudice** Count 7.

Accordingly, the Court **DEMANDS** that Plaintiff file within 14 days of the entry of this Order an Amended Complaint reflecting these dismissals and agreed clarifications. Such Amended Complaint must also clarify the Defendants against whom relief is sought in each remaining Count and, as to the Individual Defendants, in which capacities such relief is sought, consistent with this opinion.

## I. Statement of Facts

Plaintiff Stephanie Zimmeck filed the instant Complaint against the Marshall University Board of Governors and five individuals affiliated with Marshall University following Plaintiff's dismissal from Marshall University's Joan C. Edwards School of Medicine ("MUSOM"). Compl., ECF No. 1.

Plaintiff began medical school at MUSOM in August 2009. *Id*. ¶ 16. MUSOM's Academic Standards Committee placed Plaintiff on academic probation on or about December 17, 2010, because she received a "U" interim grade after one semester of a year-long Advanced Patient Care class. *Id*. ¶ 17. She passed the class in May 2011 but remained on academic probation. *Id*.

2

Defendant Aaron McGuffin, Senior Associate Dean for Student Affairs, filed a "critical incident report" against Plaintiff on or about May 27, 2011, for which she was referred to the Academic and Professional Standards Committee ("APSC"). *Id*. ¶ 18. He filed the report because Plaintiff missed a mandatory practice examination. *Id*. Plaintiff did not know the practice examination was mandatory, but she took responsibility for the oversight and arranged to take the practice examination. *Id*. Plaintiff believed these steps resolved the matter. *Id*.

Plaintiff was called to a meeting with the APSC on October 7, 2011, which she was allegedly told would concern the "critical incident report." *Id*. ¶ 20. The meeting, however, covered other issues that she had not been warned about, including her trouble adjusting to Huntington in her first year of medical school and how she subsequently began taking the anti-depressant Lexapro. *Id*. ¶ 21. The APSC issued a letter on October 18, 2011, stating that Plaintiff would stay on academic probation. *Id*. ¶ 22. Plaintiff alleges that she remained on probation even though she "had no outstanding or unresolved academic deficiencies." *Id*.

On November 8, 2011, Dr. Wesam Bolkhir submitted a report alleging that Plaintiff violated standards of professionalism between October 31, 2011, and November 7, 2011, during which time she "was suffering from unexpected and severe side effects from taking the drug Lexapro." *Id*. ¶ 24. Plaintiff met with Defendant Dr. Tracy Legrow the next day and expressed that she was having suicidal ideations. *Id*. ¶ 25. On November 23, 2011, Plaintiff met with certain doctors to create an action plan to resolve the report's claims, and the next day she resumed her Internal Medicine rotation. *Id*. ¶ 26.

On December 13, 2011, Plaintiff was informed that the APSC would meet to discuss Dr. Bolkhir's report on December 19, 2011, but that she did not need to be present because the

3

meeting "was a mere formality." *Id*. ¶¶ 28, 29. She did not attend the meeting but made herself available by phone if the APSC needed to contact her. *Id*. ¶ 29.

Plaintiff was informed on December 28, 2011, that the APSC recommended that she be dismissed from MUSOM based on Dr. Bolkhir's report and the meeting on December 19, 2011. *Id*. ¶ 30. Plaintiff appealed her dismissal, but her dismissal was upheld by the Appeals Sub-Committee of the Dean's Advisory Committee in a meeting that she was not allowed to attend. *Id*. ¶ 31.

Plaintiff subsequently filed the pending Complaint, alleging eight causes of action stemming from her dismissal. In this Complaint, Plaintiff seeks relief from the Marshall University Board of Governors and several affiliated individuals, but she does not clarify whether such relief is sought against those individuals in their individual capacities (also known as "personal capacities") and/or their official capacities.

Defendants filed the pending motion for partial dismissal. Mot. Part. Dismiss., ECF No. 13. Plaintiff filed a response, ECF No. 22, and Defendants filed a Reply, ECF No. 26. The motion is now ripe for resolution.

Section I discusses the standard of review applicable to motions to dismiss. Sections II through VI discuss Plaintiff's eight counts and the grounds for dismissal argued by Defendants.

## I. Standard of Review

Defendants move for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Court will explain the standard for dismissal under each of these provisions in turn.

### A. Dismissal Pursuant to Rule 12(b)(1)

4

Under Rule 12(b)(1), a federal court must dismiss a claim if the court lacks subject-matter jurisdiction over the claim. A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject-matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the complaint's allegations are sufficient "to sustain the court's jurisdiction." *Id*. If a "facial attack" is made, the court must accept the complaint's allegations as true and decide if the complaint is sufficient to confer subject-matter jurisdiction. *Id*. (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) and *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject-matter jurisdiction is based. *Id*. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219 and *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citation omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

5

law." *Id*. (citation omitted).

Defendants' 12(b)(1) attacks are best understood as "facial attacks," as they do not challenge the truthfulness of Plaintiff's actual allegations but rather argue grounds for immunity from suit.

**B. Dismissal Pursuant to Rule 12(b)(6)**

Under Rule 12(b)(6), a federal court must dismiss a claim which "fail[s] to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court stated that courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted) (internal quotation marks omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (citations omitted) (internal quotation marks omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. The Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations." 556 U.S. at 678 (citation omitted) (internal quotation marks omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting Twombly, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court further explained that although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Having explained the standards of review applicable to Defendants' motion for partial dismissal, the Court will now examine each of Plaintiff's causes of action and Defendants' arguments in favor of dismissing those causes of action.

### II. Count 1 (Violation of the Rehabilitation Act of 1973) and Count 2 (Violation of Title II of the Americans with Disabilities Act)

Plaintiff alleges in Count 1 that Defendants violated the rights guaranteed to Plaintiff as a "qualified individual with a disability" under the Rehabilitation Act of 1973, 29 U.S.C. § 701.

7

Based on these violations, Plaintiff seeks monetary damages, attorneys' fees and costs, and injunctive and declaratory relief. Plaintiff does not specify which Defendants are being sued in this Count or in which capacities.

Plaintiff alleges in Count 2 that Defendants violated the rights guaranteed to Plaintiff as a "qualified individual with a disability" under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). Based on these violations, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees and costs, and injunctive and declaratory relief. As with Count 1, Plaintiff does not specify which Defendants are being sued in this Count or in what capacities they are being sued.

The Individual Defendants move for dismissal from Counts 1 and 2 under Rule 12(b)(6), arguing that personal liability claims are not permitted under the Rehabilitation Act or the ADA. Defendants also argue that any demand for punitive damages in Counts 1[3] and 2 should be dismissed under Rule 12(b)(6) because the Rehabilitation Act and the ADA do not allow recovery for punitive damages. Plaintiff clarifies in her Response that she has not brought Counts 1 and 2 against the Individual Defendants and that she is not seeking punitive damages in Counts 1 and 2. Pl.'s Resp. at 6 (characterizing the inclusion of punitive damages in Count 2 as "inadvertent"). In light of Plaintiff's Response, Defendants request in their Reply that this Court's order reflect Plaintiff's clarification of this matter. Therefore, because the parties are in

---

[3] Defendants argue against punitive damages as to Count 1 out of an abundance of caution: "Plaintiff does not specifically claim a right to punitive damages in count 1 (her Rehabilitation Act claim); however, in her *ad damnum* clause she demands punitive damages generally. Count 1 is included in this argument to the extent plaintiff's demand can be understood to seek punitive damages for alleged violation of the Rehabilitation Act." Mem. in Supp. of Mot. Part. Dismiss. at 6 n.16, ECF No. 14.

agreement that Plaintiff will bring Counts 1 and 2 solely against Marshall University and that she will not seek punitive damages in Counts 1 and 2, the Court **DISMISSES without prejudice** those portions of Counts 1 and 2 which are inconsistent with this agreement.

### III. Counts 3, 4, and 5 (Civil Rights Violations)

Plaintiff alleges in Counts 3, 4, and 5 that Defendants have violated her civil rights and that she is therefore entitled to relief under 42 U.S.C. § 1983. Specifically, she alleges violations of her Fourteenth Amendment rights to procedural due process (Count 3), substantive due process (Count 4), and equal protection (Count 5). Plaintiff does not specify which Defendants are being sued in these three Counts. In each of these Counts, Plaintiff seeks compensatory damages, punitive damages, a permanent injunction "requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in," and attorneys' fees and costs. MUSOM and the Individual Defendants in their official capacities move for their dismissal from these Counts pursuant to Rule 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over them based on Eleventh Amendment immunity.

Aggrieved individuals can file suit under 42 U.S.C. § 1983 for violations of their constitutional rights. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Eleventh Amendment[4] to the United States Constitution, however, acts as a bar to certain suits seeking to enforce the civil rights otherwise guaranteed by the Constitution:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 472-473, 107 S.Ct. 2941, 2945-2946, 97 L.Ed.2d 389 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern.*

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (referring to *Quern v. Jordan,* 440 U.S. 332 (1979)).

The Supreme Court noted that "[i]t has long been settled that the [the Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citations omitted). "When deciding whether a state instrumentality may invoke the State's immunity, our cases have inquired into the relationship between the State and the entity in question." *Id*. Furthermore, the Court must "consider[] the provisions of state law that define the agency's character." *Id*. at 429 n.5.

---

[4] The Eleventh Amendment states, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." Although the phrasing suggests that suit by citizens of a state against their home state are permitted, it is well-accepted that such suits are barred as well. 13 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3524 (3d ed. 2013).

Defendants assert—and Plaintiff concedes[5]—that the Marshall University Board of Governors, doing business as MUSOM, is an arm of the State of West Virginia. The West Virginia Code confirms that Marshall University is a public institution and an agency or "arm" of the state. *See, e.g.*, W. Va. Code §§ 18-2-13d ("[T]he state educational institution located at Huntington, West Virginia, previously known as Marshall College shall, after the effective date of this section, be known as Marshall University . . . ."), 18B-2A-1 (granting the Governor the power to appoint members to the Marshall University Board of Governors and prescribing rules for the Board's composition). As an "arm of the state," the Marshall University Board of Governors has Eleventh Amendment immunity from Plaintiff's § 1983 claims.

Just as the State is immune from suits brought under § 1983, likewise are state officials acting in their official capacities immune. *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Therefore, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). The Supreme Court later clarified, however, that state officials can be sued in their individual capacities under 42 U.S.C. § 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (holding that state officials sued in their individual capacities are "persons" under § 1983 and rejecting an interpretation of *Will* that all suits against state officials are barred). Therefore, to the extent that Plaintiff seeks damages and relief from the Individual Defendants in Counts 3, 4, and 5, she can seek such remedies against the Individual Defendants in their individual (that is, personal) capacities.

---

[5] Compl. ¶ 6.

Three exceptions to Eleventh Amendment immunity exist, however, that the Court must consider as possibly applicable to the Marshall University Board of Governors and the Individual Defendants. First, Eleventh Amendment immunity is waived if the State makes "a 'clear' indication of the [its] intent to waive its immunity" *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-81 (1999)). Defendants assert that this exception is not satisfied, and Plaintiff does not argue otherwise. The Court has not found any indication that the State of West Virginia clearly waived its immunity to suit, and therefore the first exception does not apply here.

Second, Eleventh Amendment immunity is waived by "Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity." *Coll. Sav. Bank*, 527 U.S. at 680-81. In this regard, "the law is well-settled that Congress has not abrogated Eleventh Amendment immunity in the context of a § 1983 action." *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *5 (S.D. W. Va. July 12, 2013) (citing *Quern*, 440 U.S. 332). Defendants argue that this exception is not met, and Plaintiff does not argue otherwise. The Court agrees with Defendants that the second exception does not apply here.

The third exception is that "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Chafin*, 2013 WL 3716673, at *5 (unpublished) (quoting *Frew* ex rel. *Frew v. Hawkins*,[6] 540 U.S. 431, 437 (2004)

---

[6] In *Frew,* the plaintiffs originally sued the Texas Department of Health, the Texas Health and Human Services Commission, and state officials for injunctive relief under § 1983, and the district court below had dismissed the state agencies based on Eleventh Amendment immunity.

12

(citation omitted)). This exception only covers prospective relief for ongoing violations of federal law. *Sarkissian v. W. Va. Univ. Bd. of Governors*, No. 1:05-cv-144, 2007 WL 1308978, at *4 (N.D. W. Va. May 3, 2007) (unpublished) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 496 (4th Cir. 2005)); *see also Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (noting the recognition of this exception in *Ex parte Young*, 209 U.S. 123 (1908)); *Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 929 (D.C. Cir. 2012) ("The *Ex parte Young* doctrine allows suits for declaratory and injunctive relief against government officials in their official capacities—notwithstanding the sovereign immunity possessed by the government itself."). The idea that a court can order prospective injunctive relief from state officials but not from the state itself rests on a curious—yet accepted—legal fiction:

> The *Ex parte Young* doctrine is based on a "fiction"—namely, that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is called a fiction because the suit in effect binds the government entity just as would a suit against the government entity itself.

*Vann*, 701 F.3d at 929 (citations omitted) (internal quotation marks omitted). This district analyzed the third exception in *Chafin,* where the magistrate found that the exception was not met as to defendants Western Regional Jail and the separate correctional authority because those defendants were entities rather than officials, and regardless, the plaintiff did not seek prospective relief. *Chafin*, 2013 WL 3716673, at *5 (noting that "the exception 'applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought'" (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993))).

Therefore, in summary, the Court finds that Plaintiff's claims in Counts 3, 4, and 5 may proceed against the Individual Defendants in their individual capacities as to all relief sought, and against the Individual Defendants in their official capacities only as to Plaintiff's request for prospective injunctive relief. The remainder of the possible claims within these Counts is dismissed, including Plaintiff's claims against the Marshall University Board of Governors.[7]

### IV. Count 6 (Breach of Contract)

Plaintiff alleges in Count 6 that MUSOM breached the express and implied contract that existed between Plaintiff and MUSOM. As a result, Plaintiff seeks monetary damages and attorneys' fees and costs. Plaintiff asserts in her Response that she also seeks injunctive relief as to Count 6. Pl.'s Resp. at 8-9. The language of the Count, however, does not mention injunctive relief. The parties do not dispute that Plaintiff only seeks relief against the University in this Count.

Regardless of the type of relief sought, for the reasons explained above in Section III, Plaintiff's claim against Marshall University for breach of contract is barred by the Eleventh Amendment. *See also Sarkissian*, 2007 WL 1308978, at *10 (finding public university West Virginia University immune under the Eleventh Amendment from breach of contract claim). Plaintiff is solely suing the University in Count 6, and therefore the Court need not address the

---

[7] Both sides believe that the Court can order prospective injunctive relief as to Marshall University and not just as to the Individual Defendants in their official capacities. Based on the analysis above, however, the parties are mistaken and the Court cannot order prospective injunctive relief as to Marshall University because the Court lacks subject-matter jurisdiction over such a claim. Because issues of subject-matter jurisdiction can be raised by the court *sua sponte*, the parties' (mistaken) agreement on that matter does not prevent this Court from ruling otherwise.

possibility of suits against the Individual Defendants for breach of contract. Therefore, Count 6 is dismissed in its entirety.

### V. Count 7 (Negligence)

Plaintiff alleges in Count 7 that MUSOM engaged in negligent hiring, training, and supervision. Defendants argue that Count 7 should be dismissed based on Eleventh Amendment immunity. Plaintiff "voluntarily withdraws" this Count in her Response. Pl.'s Resp. at 11. Therefore, the Court DISMISSES without prejudice Count 7.

### VI. Count 8 (Intentional Infliction of Emotional Distress)

Plaintiff alleges in Count 8 that Defendants' conduct amounts to an intentional infliction of emotional distress ("IIED"). As a result, she seeks compensatory damages, punitive damages, and attorneys' fees and costs. Again, Plaintiff does not specify which Defendants she is suing in this Count.

Defendants request that the Court dismiss Count 8 as against the University and the Individual Defendants in their official capacities. Plaintiff does not argue otherwise, and in fact concedes in her Response that this Count "is brought only against individual defendants in their individual capacities." Pl.'s Resp. at 11. Based on this concession, and for the reasons stated in Section III, the Court accordingly would allow Count 8 to proceed to the extent that it seeks relief from the Individual Defendants in their individual capacities.

Defendants additionally argue, however, that Count 8 should be dismissed in its entirety under Rule 12(b)(6) because it fails to sufficiently allege an IIED claim. A claim for IIED requires four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with

> the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 14, *O'Dell v. Stegall*, 703 S.E.2d 561 (2010) (internal quotation marks omitted) (quoting Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (1998)).

Although a jury ultimately decides if the conduct was outrageous, "the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." Syl. Pt. 4, *Travis*, 504 S.E.2d 419. In the end, liability can only be found where the conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 224 (W. Va. 1994) (quoting *Restatement (Second) of Torts* § 46 comment d)).

In assessing Plaintiff's claim against this standard, the Court is guided by other cases where IIED has been alleged. *Compare, e.g.*, *Bertolotti v. Prunty*, No. 3:09-cv- 0952, 2010 WL 3743866, at *5-6 (S.D. W. Va. Sept. 21, 2010) (unpublished) (dismissing IIED claim where defendant-teacher ridiculed plaintiff-student with hearing impairment and was "hostile and demeaning" toward the plaintiff), *and Burgess v. Gateway Commc'ns*, 26 F. Supp. 2d 888, 893-94 (S.D. W. Va. 1998) (granting summary judgment against the plaintiff on IIED claim where the plaintiff "simply recite[d] a relatively small number of insults, indignities, threats, annoyances, and petty oppressions"), *with Bell v. Nat'l Republican Cong. Comm.*, 187 F. Supp. 2d 605, 617-18 (S.D. W. Va. 2002) (in denying the defendant's motion for summary judgment

16

on IIED claim, noting that "being labeled a child molester and rapist [in a pamphlet] may reasonably be considered outrageous").

Plaintiff does not attempt to directly compare her situation to any cases in which a court has found that a plaintiff stated a claim for IIED. Based on this Court's own review, the Court finds that Defendants' conduct cannot reasonably be regarded as so extreme and outrageous as to amount to IIED. The Court does not minimize Plaintiff's alleged anguish, the ripples this dismissal has had in Plaintiff's life, and the alleged damage to her confidence and reputation. However, Defendants' actions occurred within the confines of an established system for student dismissals, albeit one which she claims was unfair and improperly used. The dismissal process did not amount to public stigmatization. Although Plaintiff disagrees with her dismissal from the school, none of Defendants' actions have the hallmark of unbearable outrageousness. The anger Plaintiff feels is to be expected from any student who is dismissed from a university against his or her will. A reasonable juror could not find that this conduct rises to the level of being so extreme that no reasonable person could be expected to endure it. Therefore, the Court dismisses Count 8 in its entirety.

### VII. Conclusion

The Court **GRANTS in part** Defendants' motion for partial dismissal (ECF No. 13). Counts 3, 4, and 5 may proceed against the Individual Defendants in their individual capacities as to all relief sought in those Counts and against the Individual Defendants in their official capacities as to Plaintiff's request for prospective injunctive relief in those Counts. The Court **DISMISSES** the remainder of Counts 3, 4, and 5. Also, the Court **DISMISSES** Counts 6 and 8 in their entirety.

The parties are in agreement that Plaintiff will bring Counts 1 and 2 solely against the Marshall University Board of Governors and that she will not seek punitive damages in Counts 1 and 2. The parties also agree that Count 7 should be dismissed. The Court **DISMISSES without prejudice** those portions of Counts 1 and 2 which are inconsistent with this agreement among the parties and **DISMISSES without prejudice** Count 7.

Accordingly, the Court **DEMANDS** that Plaintiff file within 14 days of the entry of this Order an Amended Complaint reflecting these dismissals and agreed clarifications. Such Amended Complaint must also clarify the Defendants against whom relief is sought in each remaining Count and, as to the Individual Defendants, in which capacities such relief is sought, consistent with this opinion.

Furthermore, the Court **DENIES as moot** Mr. Shapiro's motion to dismiss (ECF No. 11).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   October 18, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE