IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEPHANIE ZIMMECK,

                Plaintiff,

v.                            CIVIL ACTION NO.  3:13-14743

MARSHALL UNIVERSITY BOARD OF
GOVERNORS d/b/a Marshall University, Joan
C. Edwards School of Medicine, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' second motion to dismiss (ECF No. 24) and Defendants' third motion to dismiss (ECF No. 37). For the reasons explained below, Defendants' second and third motions to dismiss are **GRANTED**. The Court dismisses Counts 3, 4, and 5 in their entirety. The Court accordingly **GRANTS** Plaintiff's pending motion for leave to file a second amended complaint (ECF No. 42) and **DIRECTS** Plaintiff to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, a second amended complaint which reflects the dismissal of these three Counts.

## I.  Statement of Facts

Plaintiff Stephanie Zimmeck commenced this lawsuit against the Marshall University Board of Governors[1] and several individuals affiliated with Marshall University following

---

[1] The Marshall University Board of Governors does business as the Joan C. Edwards School of Medicine ("MUSOM"). The parties also refer to this party simply as "Marshall University." These three terms appear to be used interchangeably by the parties and the Court follows suit here.

Plaintiff's dismissal from Marshall University's Joan C. Edwards School of Medicine ("MUSOM"). Background information regarding the facts of this case are discussed in the Memorandum Opinion and Order entered by this Court on October 18, 2013, ECF No. 32, and need not be repeated here. Plaintiff's Complaint, ECF No. 1, brought seven Counts against Defendants: 1) violation of the Rehabilitation Act of 1973; 2) violation of the Americans with Disabilities Act; 3) violation of Plaintiff's right to procedural due process; 4) violation of Plaintiff's right to substantive due process; 5) violation of Plaintiff's Fourteenth Amendment right to equal protection; 6) breach of contract; 7) negligence; and 8) intentional infliction of emotional distress. The original Complaint did not specify which Defendants were sued in each Count or in which capacities the individual Defendants were being sued.

In their first motion to dismiss, Defendants moved for partial dismissal of the Complaint. ECF No. 13. For the reasons explained in the Memorandum Opinion and Order dated October 18, 2013, this Court dismissed Counts 6, 7, and 8 in their entirety and allowed Counts 1 and 2 to proceed solely against Marshall University; however, Plaintiff was prohibited from seeking punitive damages in Counts 1 and 2. Additionally, this Court held that Counts 3, 4, and 5 could proceed against the Individual Defendants[2] in their individual capacities as to all relief sought in those Counts and against the Individual Defendants in their official capacities as to Plaintiff's request for prospective injunctive relief in those Counts; the remainder of Counts 3, 4, and 5 was dismissed. The Court ordered Plaintiff to file an amended complaint reflecting these dismissals and clarifications. Plaintiff filed her Amended Complaint on November 1, 2013. ECF No. 36.

---

[2] That is, Aaron McGuffin, Tracy Legrow, Robert C. Nerhood, and Maria Veitia. Joseph I. Shapiro was terminated from this case via a Stipulation of Voluntary Dismissal, ECF No. 23.

This Amended Complaint is in compliance with the Memorandum Opinion and Order, except that Plaintiff persists in bringing Counts 3, 4, and 5 against Marshall University.

Before this Court resolved Defendants' first motion to dismiss, ECF No. 13, Defendants filed a second motion to dismiss, ECF No. 24. This second motion to dismiss brought up arguments different from those in the first motion; namely, Defendants argued in their second motion to dismiss that Plaintiff's civil rights claims (Counts 3, 4, and 5) should be dismissed for a variety of reasons:

> 1) [P]laintiff has failed to plead facts which would support an equal protection claim; 2) [P]laintiff has failed to allege a protected property right which would support a due process claim; 3) had [P]laintiff alleged a protected property right, her procedural due process claim would fail as she received all the process due; 4) had [P]laintiff alleged a protected property right, her substantive due process claim would fail as the decision she challenges and the manner it was arrived at do not shock the conscience; and 5) the claims against the individual defendants are barred by qualified immunity.

2d Mot. Dismiss 2-3, ECF No. 24. The second motion to dismiss is ripe for resolution.

Defendants also filed a third motion to dismiss. ECF No. 37. This motion and the accompanying memorandum briefly reiterate the grounds already covered in the second motion to dismiss (but do not add to them) and additionally point out that Plaintiff, per the Court's Memorandum Opinion and Order, is prohibited from seeking damages against Marshall University in Counts 3, 4, and 5 of the Amended Complaint. Plaintiff responds that she does not object to this point about Marshall University, and she accordingly seeks leave to file a second amended complaint to make this correction. ECF No. 42. The Court held Plaintiff's motion for leave in abeyance, pending resolution of Defendants' second motion to dismiss. ECF No. 43. The parties and the Court agree that Counts 3, 4, and 5 cannot proceed against Marshall University. Therefore, the Court grants Defendants' third motion to dismiss and Plaintiff's motion for leave. However, because the Court dismisses Counts 3, 4, and 5 in their entirety for

the reasons explained below, Plaintiff's proposed second amended complaint is insufficient, and Plaintiff is instead directed to file a second amended complaint which conforms to this Memorandum Opinion and Order.

The only remaining issues are the grounds for dismissal found in Defendants' second motion to dismiss. In Section II, the Court will discuss the legal standard applicable to the motion to dismiss.[3] Section III addresses whether the Court can consider the exhibits attached the Defendants' motion to dismiss. Section IV examines Plaintiff's equal protection claim. In Section V, the Court analyzes whether Plaintiff has a protected property interest for purposes of her due process claims. Sections VI and VII discuss Plaintiff's procedural due process and substantive due process claims, respectively. Section VIII discusses qualified immunity.

## II.      Standard of Review

Under Rule 12(b)(6), a federal court must dismiss a claim which "fail[s] to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court stated that courts must look for "plausibility" in the complaint. 550 U.S. 544, 557-63 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."

---

[3] In the remainder of this Memorandum Opinion and Order, except where otherwise explicitly stated, this Court will refer to Defendants' second motion to dismiss simply as Defendants' "motion to dismiss."

*Id*. at 558 (citations omitted) (internal quotation marks omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. The Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations." *Id*. at 678 (citation omitted) (internal quotation marks omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court further explained that although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

The determination of whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Having explained the standard of review applicable to Defendants' motion to dismiss, the

Court will now explore what documents can be considered on a pending motion to dismiss.

### III.   Defendants' Exhibits

Defendants attached eighteen exhibits to their motion to dismiss. Federal Rule of Civil Procedure 12(d) states:

> If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Attaching documents to a motion to dismiss does not automatically change it into a motion for summary judgment, however. Rather, the motion may become one for summary judgment when the Court chooses to consider those outside documents. *See, e.g.*, *Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen v. Norfolk S. Corp.*, 109 F.3d 993, 995-96 (4th Cir. 1997).

The Fourth Circuit, however, has adopted an exception to the rule that extrinsic documents should not be examined on a motion to dismiss:

> Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). Plaintiff acknowledges this exception but argues that "Defendants seek to rely on multiple documents, not explicitly relied upon by Plaintiff in the complaint, to effectively seek summary judgment. These documents should be stricken from consideration." Pl.'s Resp. 7, ECF No. 33. While Plaintiff's Response suggests that she only objects to some—but not all—of the exhibits, Plaintiff never specifies which documents she believes fall outside of the exception.

Defendants, in their Reply, make a concession about some of the exhibits and modify on which documents the Court should focus:

> A few exhibits . . . were produced to provide context for the Court; those documents are not necessary for the motion to dismiss and the Court need not consider them. Most exhibits, however, were produced because they track the allegations in [P]laintiff's complaint. Regardless, the only two documents of immediate relevance to the motion to dismiss fit comfortably in the *Trigon* formulation.

Defs.' Reply 2-3, ECF No. 34. Those two documents, Defendants explain, are the Marshall University Joan C. Edwards School of Medicine Policy Regarding Academic and Professionalism Standards, Leaves and Appeals (hereinafter "Academic and Professionalism Policy"), ECF No. 24-2, and the October 18, 2011, letter regarding Plaintiff's probation, ECF No. 24-11. The Court will assess whether these two exhibits, and others, fit into the *Trigon* exception.

In regards to the Academic and Professionalism Policy, Plaintiff alleges in her Amended Complaint that the decision of the Academic and Professionalism Standards Committee ("APSC") to keep Plaintiff on academic probation was "a clear violation of MUSOM policy. The policy states that students may be placed on academic probation for failing to correct deficiencies or for not receiving a passing grade." Am. Compl. ¶ 21. Plaintiff refers to MUSOM policy again later in the Complaint. Am. Compl. ¶ 65. Based on the substance of the Academic and Professionalism Policy and the context of the Amended Complaint, it is clear that these references to "MUSOM policy" mean the Academic and Professionalism Policy. The Court therefore finds that the Academic and Professionalism Policy is integral to Plaintiff's Amended Complaint and that Plaintiff explicitly relied thereon in formulating her allegations. Plaintiff does not challenge the authenticity of Exhibit 2. Therefore, the Academic and Professionalism Policy

meets the *Trigon* exception and may be considered by the Court without converting this motion into one for summary judgment.

Exhibit 11 is a letter dated October 18, 2011, from the APSC to Plaintiff, stating that Plaintiff will remain on academic probation. ECF No. 24-11. Plaintiff quotes from this letter in her Amended Complaint and her claims are based in part on the actions of the Committee. Am. Compl. ¶¶ 21, 22, 65. Plaintiff does not dispute the authenticity of this letter. The Court finds that this letter is an integral part of Plaintiff's Amended Complaint and that she relied on the letter in her allegations. This exhibit therefore meets the *Trigon* exception and may be considered by the Court without converting this motion into one for summary judgment.

Although Defendants' Reply focuses on Exhibits 2 and 11, there are other Exhibits which comfortably fit into the *Trigon* exception and are of particular relevance to certain lines of analysis. The Court will discuss these Exhibits later in this Memorandum Opinion and Order. In summary, the Court may consider Exhibits 2 and 1, and certain other exhibits, when analyzing Defendants' motion to dismiss. The motion is not converted into one for summary judgment.

## IV.    Equal Protection Claim

Defendants argue that Plaintiff has failed to plead sufficient facts to support an equal protection claim. In the Fourth Circuit, "[i]n order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dept. of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)).

Plaintiff alleges that Defendants' conduct has "resulted in the denial of equal protection rights, as a 'class of one.'" Am. Compl. ¶ 83. In a typical equal protection claim, a plaintiff

alleges membership in a certain "class" or group and that he or she was discriminated against because of that membership. In a "class of one" case, however, "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591 (2008), the Supreme Court of the United States held that the "class of one" theory does not apply in the context of public employment:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.

*Id.* at 603. As Defendant points out, several district courts in the Fourth Circuit have found, based on *Engquist*, that the "class of one" theory does not apply in public education settings. For example, the Eastern District of Virginia has held twice that "the public education context [is a] . . . poor fit for class-of-one equal protection claims due to the inherently discretionary decision-making that occurs there." *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12-CV-236, 2012 WL 2878608, at *11 (E.D. Va. July 13, 2012) (dismissing equal protection claim of individual discharged from graduate physical therapy program), *aff'd*, 523 F. App'x 204 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 236 (Oct. 7, 2013); *Abbas v. Woleben*, No. 3:13-CV-147, 2013 WL 5295672, at *8 (E.D. Va. Sept. 19, 2013) (quoting *Nofsinger* and dismissing equal protection claim, where the plaintiff claimed he was improperly discharged from medical school). The District of Maryland has also held that the "class of one" theory does not apply within the setting of public education. *Uzoukwu v. Prince George's Cmty. Coll. Bd. of Trustees*, No. CIV.A. DKC 12-3228, 2013 WL 4442289, at *9-10 (D. Md. Aug. 15, 2013). This Court has not found—and

Plaintiff has not pointed to—any cases from the Fourth Circuit that refute the proposition that the "class of one" theory does not apply in public education settings.[4] This Court agrees with the reasoning of the other district courts in this Circuit and accordingly finds that Plaintiff cannot use a "class of one" equal protection theory here.

Even to the extent that Plaintiff's equal protection claim could be interpreted in the alternative to also rely on traditional equal protection theory—a proposition which is dubious based on the wording of the Amended Complaint—, Plaintiff still fails to state a claim. As explained above, a traditional equal protection claim requires the plaintiff to "plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics*, 639 F.3d at 108 (4th Cir. 2011). Plaintiff alleges that she was treated differently from "similarly situated medical students," Am. Compl. ¶ 83, and held to a higher standard than her peers, *id.* ¶ 29, but she does not provide any factual details regarding the students to which she is comparing herself.

In *Nofsinger*, the plaintiff was dismissed from a graduate physical therapy program after failing a clinical course. That plaintiff alleged in her complaint that three or more other similarly-situated students were also dismissed. The court found that she failed to allege a traditional equal protection claim, as she "fail[ed] to plead any facts whatsoever, with respect to how the three to six students described in her Complaint were similarly situated to her." *Nofsinger*, 2012 WL 2878608, at *9. Furthermore, she pled no facts "that would plausibly link [her] dismissal from

---

[4] Plaintiff cites *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), but *Constantine* merely describes how "[s]tates may make distinctions on the basis of disability so long as there is a rational relationship between the disparity of treatment and some legitimate governmental purpose," and does not discuss class of one claims. *Id.* at 486 (citation omitted) (internal quotation marks omitted).

the Program to any personal animus or discrimination on the part of the individual Defendants."
*Id.*

The Court believes that a parallel can be drawn between *Nofsinger* and the instant case. Plaintiff here pled even fewer facts concerning how other students were treated than did the plaintiff in *Nofsinger.* Plaintiff does not allege any facts describing how other students were treated in the face of possible dismissal, and merely relies on generalizations. Furthermore, Plaintiff has not pled any facts concerning possible improper animus. Plaintiff claims she was told that she need not attend a meeting on December 19, 2011—the meeting which ultimately resulted in her dismissal—because the meeting "was a mere formality." Am. Compl. ¶ 28. Although she states in her Response that Defendant Dr. Legrow "blantantly lied" to her about what the December 2011 would entail, Resp. 10, she never alleges *in the Amended Complaint itself* that she was lied to. On the face of the Amended Complaint, it is just as plausible that Dr. Legrow was mistaken about what the meeting would entail. It is not sufficient for Plaintiff to accuse Dr. Legrow of lying in the Response rather than in the Amended Complaint. Furthermore, as Plaintiff's original and Amended Complaints make clear, the APSC consisted of several members, and Plaintiff made no specific or even general allegations of improper animus as to any its members. Although all inferences will be taken in the light most favorable to Plaintiff, Plaintiff is not excused of her obligation to plead facts in the Amended Complaint from which the Court is able to make those necessary inferences. Additionally, this is not a situation where Plaintiff was impeded in being able plead such facts at this stage, before substantial discovery occurred. *Compare Nofsinger* (dismissing equal protection claim and noting that plaintiff pled no facts concerning treatment of other students in the dismissal process), *with Mezu v. Morgan State Univ.*, No. CIV.A. WMN-11-3072, 2012 WL 3610849, at *4 (D. Md. Aug. 21,

2012) (allowing equal protection claim to proceed, where the plaintiff alleged improper handling of her FMLA request, and noting that "it would be difficult to make . . . identifications [concerning other FMLA requests] without discovery."). For all these reasons, Plaintiff's equal protection claim (Count 5) is dismissed.

## V.        Protected Property Interest for Due Process Claims

For substantive and procedural due process claims, a plaintiff is required to allege a protected property interest:

> In order to make out either a substantive or procedural due process claim, a plaintiff must allege sufficient facts to support a finding that the [plaintiffs] "were deprived of life, liberty, or property, by governmental action." *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997). A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source. *See Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Tri–County Paving, Inc. v. Ashe County,* 281 F.3d 430, 436 (4th Cir. 2002). In order to have a property interest in a benefit, a person must have more than a mere "unilateral expectation of it" or "abstract need or desire for it." *See Roth,* 408 U.S. at 577, 92 S. Ct. 2701.

*Equity in Athletics*, 639 F.3d at 109. Defendants argue that Plaintiffs' substantive and procedural due process claims (Counts 3 and 4) should be dismissed because Plaintiff has failed to allege a protected property interest which could form the basis of these claims. Specifically, Defendants argue that continued enrollment in a graduate education program is not a protected property interest.

As stated in *Abbas*, "Neither the Fourth Circuit nor the Supreme Court has ruled directly on the issue of whether a property interest exists in continuing education." 2013 WL 5295672, at *7; *see also Nofsinger*, 2012 WL 2878608, at *6 ("The Fourth Circuit has never held that continued enrollment in graduate school constitutes a protected property interest."). That being said, an independent source can create a protected property interest in some situations, and a contract can be one such independent source. *Osborne v. King*, 570 F. Supp. 2d 839 (S.D. W. Va.

-12-

2008) ("in order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it -- created, for example, by contract or state law" (citation omitted) (internal quotation marks omitted)); *see also Abbas,* 2013 WL 5295672, at *7; *Uzoukwu,* 2013 WL 4442289, at *8. However, "[n]ot all rights derived from contractual relationships with the state qualify as constitutional property rights." *Uzoukwu,* 2013 WL 4442289, at *8 (citing *Coastland Corp. v. Cnty. of Currituck,* 734 F.2d 175, 178 (4th Cir. 1984)). Many courts have taken the pragmatic approach of assuming the existence of a protected property interest at the motion to dismiss stage. *See, e.g., Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 222 (1985).

The Court notes that Plaintiff's original Complaint referred to the Marshall University Student Handbook, the Student Impairment Assistance Policy, the Marshall University Graduate Catalog, and "MUSOM policy," which the Court infers to mean the Academic and Professionalism Policy. In her Response, Plaintiff refers to these documents as proof that she has a protected property interest. Her later Amended Complaint, however, only contains reference to the Academic and Professionalism Policy and the Student Impairment Assistance Policy. In light of this situation, the Court will take the same route as other courts and will assume—without deciding—that Plaintiff has plausibly pled a protected property interest for the purpose of deciding this motion to dismiss.

## VI.    Procedural Due Process

Having assumed for the purpose of the motion to dismiss that Plaintiff does have a protected property interest, the Court now turns to whether her procedural due process claim fails for other reasons. Specifically, Defendants argue that even if Plaintiff has a protected property

interest, Plaintiff has received all of the process that she is due under the Due Process Clause and therefore her procedural due process claim should be dismissed.

If a student is dismissed from a public education program for disciplinary reasons—rather than academic reasons—that student is entitled to, at the least, "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). In contrast, when a student is dismissed for academic reasons,

> the standard for evaluating whether there has been a denial of procedural due process is substantially relaxed. *See Siu v. Johnson,* 748 F.2d 238, 244-45 (4th Cir. 1984). In such a case, an individual has received due process if the decision was not arbitrary and capricious. *See id.* at 245. A decision is arbitrary and capricious if, in the end, it did not "involve the exercise of professional judgment." *Id.*

*Betts v. Rector & Visitors of Univ. of Va.*, No. 97-1850, 1999 WL 739415, at *8 (4th Cir. Sept. 22, 1999).

The Supreme Court addressed dismissal from medical school in *Board of Curators of the University of Missouri v. Horowitz*:

> Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement. In *Goss,* the school's decision to suspend the students rested on factual conclusions that the individual students had participated in demonstrations that had disrupted classes, attacked a police officer, or caused physical damage to school property. The requirement of a hearing, where the student could present his side of the factual issue, could under such circumstances "provide a meaningful hedge against erroneous action." *Ibid.* The decision to dismiss respondent, by comparison, rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. *Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative*

-14-

> *information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.*
>
> Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. In *Goss,* this Court concluded that the value of some form of hearing in a disciplinary context outweighs any resulting harm to the academic environment. Influencing this conclusion was clearly the belief that disciplinary proceedings, in which the teacher must decide whether to punish a student for disruptive or insubordinate behavior, may automatically bring an adversary flavor to the normal student-teacher relationship. The same conclusion does not follow in the academic context.

435 U.S. 78, 89-90 (1978) (emphasis added). The Supreme Court noted that the former student had been warned to improve her hygiene and time management and "[t]he record . . . leaves no doubt that respondent was dismissed for purely academic reasons." *Id.* at 91 n.6 (noting that "questions of personal hygiene and timeliness" are "inquiries that a school may make in academically evaluating a [medical] student").

The Fourth Circuit has interpreted *Horowitz* to mean that "in the context of due-process challenges, . . . a court should defer to a school's professional judgment regarding a student's academic or professional qualifications." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012). In *Halpern*, the Fourth Circuit reviewed a medical school's decision to dismiss a student due to concerns regarding his professionalism. It noted that "[a]dopting an appropriately deferential view, we find that professionalism was an essential requirement of the Medical School's program and that . . . Halpern could not satisfy this requirement." *Id.* at 463. In *Nofsinger*, the plaintiff was dismissed from a graduate physical therapy program for "lack of academic progression and professional behavior" after failing a clinic course. 2012 WL 2878608, at *2. The district court found that her dismissal was for academic reasons. In making this decision, the court noted in part that she was "on notice that professionalism was at the very core of the Department's philosophy—and thus necessary for success in the program." *Id.* at *7.

Plaintiff maintains that her dismissal was disciplinary, but the Court disagrees. The case law explained above shows that dismissal from a medical school program because of professionalism concerns is a dismissal for academic reasons. The Academic and Professionalism Policy makes it clear that professionalism is crucial for successful completion of the medical program. That academic standing and professional standing are addressed in two distinct sections of the Policy—Sections 2 and 3, respectively—does not change the fact that this was a professionalism-related decision to which much deference is due. Furthermore, the letter summarizing why Plaintiff was first placed on Academic Probation in December 2010 states that her "academic/professional performance will be reviewed again at the end of the probation period." ECF No. 24-4.[5] This shows that professionalism is intertwined with academic considerations in the Marshall University medical program, and these considerations were at the heart of the Defendants' decisions. A May 27, 2011, critical incident report noted that Plaintiff exhibited "an apparent pattern of unprofessional behaviors." ECF No. 24-6.[6] Plaintiff received a letter on October 18, 2011, which informed her that: she would remain on Academic Probation; the APSC would continue to review her "academic and professional progress;" and "[r]eceipt of any incident report due to [her] professional misconduct will result in serious sanctions which can include suspension or possibly dismissal from the school of medicine." ECF No. 24-11. These actions again show how professionalism was a component of academic achievement in the Marshall University medical program.

---

[5] Plaintiff does not dispute the authenticity of this letter, and she refers to her December 2010 placement on Academic Probation in her Amended Complaint. Am. Compl. ¶ 16. This letter clearly falls into the *Trigon* exception and therefore can be considered by the Court.

[6] Plaintiff refers to this report in her Amended Complaint, Am. Compl. ¶ 17, and in her Response, Resp. 2. This report falls within the *Trigon* exception.

The Court finds that the requirements of procedural due process were met here. From December 2010 through May 2011, Plaintiff was aware of serious concerns regarding her professionalism. Thus, on October 18, 2011, she was formally advised via letter that the APSC would continue to review her "academic and professional progress" and that she could be dismissed if there were further problems. ECF No. 24-11. A report alleging further professionalism concerns was filed on November 8, 2011,[7] and a meeting was scheduled for December 19, 2011, to discuss that report. Plaintiff claims she was told that she need not attend the meeting on December 19, 2011—the meeting which ultimately resulted in her dismissal—because the meeting "was a mere formality." Am. Compl. ¶ 28. Plaintiff states that she was blindsided by the fact that dismissal was discussed at the meeting at all. Even if this is true, Plaintiff nonetheless was provided all of the process that she was due in the course of this academic dismissal. She was on notice of concerns about her professionalism and had been warned in October 2011 that any further professionalism problems could result in her dismissal.[8] Because her dismissal was for academic reasons (specifically, professionalism concerns), there is no requirement that she be given a hearing before being dismissed.

Furthermore, throughout the entire timeline of Plaintiff's difficulties with Marshall University, she has had the opportunity to provide input and respond to the allegations against her. This is made clear by the allegations in Plaintiffs' Amended Complaint. For example, Plaintiff met with the APSC on October 7, 2011; although she claims she was allegedly unaware

---

[7] ECF No. 24-12, at 1-3 (report filed by Dr. Wesam A. Bolkhir). Plaintiff refers to this report in her Amended Complaint. Am. Compl. ¶ 23. This report falls within the *Trigon* exception.

[8] The Court's conclusion that the requirements of procedural due process were met here is also not changed by the fact that it may have been an error for the October 2011 letter to state that Plaintiff was on Academic Probation rather than Administrative Probation, given the definitions in the Academic and Professionalism Policy. *See* Academic & Professionalism Policy § 2.

of what the meeting would entail, this meeting nonetheless provided an opportunity for her to answer the Committee's questions about her conduct, and she did so. Am. Compl. ¶¶ 19, 20. Plaintiff met with Defendant Dr. Legrow "immediately" following the filing of the November 2011 report, *id.* ¶ 24, and she met with additional individuals to create an "action plan" soon thereafter, *id.* ¶ 25. Although the Policy does not mandate that Plaintiff be allowed to appear at any meeting which results in dismissal, there was a three-level appeal process available to Plaintiff through which she provided written grounds for her appeal. ECF No. 24-17.[9]

Plaintiff points out that she established the action plan to resolve professionalism concerns in conjunction with faculty after the November 2011 report was filed but before the December meeting took place. The existence of that action plan, however, does not necessarily shield her from dismissal under the terms of the Policy. The Academic and Professionalism Policy states, "Failure to make 'satisfactory academic or professional progress' as defined by the APSC will result in immediate dismissal and/or other action." Academic & Professionalism Policy § 5.4.[10] In this case, just such a failure led to Plaintiff's dismissal. Plaintiff has not plausibly pled any facts showing that school officials did not exercise professional judgment when dismissing her. Plaintiff was provided with all of the process that she was due.

For all of these reasons, the Court finds that Plaintiff has not plausibly pled a violation of her procedural due process rights. Therefore, Count 3 is dismissed.

### VII.  Substantive Due Process

---

[9] Plaintiff notes that she "exhausted her administrative remedies by timely appealing the decision to dismiss her." Am. Compl. ¶ 30. Her written grounds for appeal fall within the *Trigon* exception.

[10] Additionally, "satisfactory academic and professional progress" is defined "on an individual basis." Academic & Professionalism Policy § 5.3.

Defendants additionally argue that even if Plaintiff has a protected property interest, her substantive due process claim must be dismissed because the decision she challenges and the manner in which the decision was made do not "shock the conscience." A substantive due process violation only exists where the defendant's conduct was "so arbitrary and egregious as to 'shock the conscience.'" *Butler,* 121 F. App'x at 519; *see also Abbas*, 2013 WL 5295672, at *7 (quoting this standard). The plaintiff "would need to show that there was no rational basis for the university's decision or must show that the dismissal was motivated by bad faith or ill will unrelated to academic performance." *Abbas*, 2013 WL 5295672, at *7 (citation omitted) (internal quotation marks omitted).

Plaintiff does not dispute this standard. Instead, she points to *Connelly v. University of Vermont and State Agricultural College*, 244 F. Supp. 156 (D. Vt. 1965), to show that she meets this standard. In that case, the plaintiff alleged that a college professor had "decided early in said period that he would not give plaintiff a passing grade," and the court found that this was "equivalent . . . to an allegation of bad faith, arbitrariness, and capriciousness on the part of the said instructor." *Id.* at 161. Although Plaintiff alleges generally that Defendants acted arbitrarily and capriciously, she does not point to any specific behavior that falls into this category. Plaintiff does not allege in the Amended Complaint that anybody lied to her about the basis of the APSC's decisions or that there was otherwise ill will or bad faith. Also, there was a rational basis for her dismissal here based on the October 2011 letter, the November 2011 report, and the terms of the Academic and Professionalism Policy. Plaintiff has not sufficiently pled a violation of her substantive due process rights. The Court therefore dismisses Count 4.

-19-

## VIII.   Qualified Immunity

Lastly, Defendants argue that the Individual Defendants are entitled to qualified immunity as to Counts 3, 4, and 5. The Court need not reach this issue because Counts 3, 4, and 5 have been dismissed on other grounds.

## IX.   Conclusion

For the reasons explained above, Defendants' second and third motions to dismiss are **GRANTED**. The Court dismisses Counts 3, 4, and 5 in their entirety. The Court accordingly **GRANTS** Plaintiff's pending motion for leave to file a second amended complaint and **DIRECTS** Plaintiff to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, a second amended complaint which reflects the dismissal of these three Counts.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        January 10, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE